In re KEELER.

(District Court, N. D. New York.    July 24, 1917.)

BANKRUPTCY ⬗426(2)—DISCHARGE—DEBTS NOT AFFECTED—"WILLFUL IN-
JURY."

    The intentional conversion of money of another, deposited as security
for the performance of a contract, is a "willful injury" to the property
of such other, within the meaning of Bankr. Act July 1, 1898, c. 541, § 17a
(2), 30 Stat. 550, as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798
(Comp. St. 1916, § 9601), and a claim therefor is not released by a discharge
in bankruptcy.

    [Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Willful.]

In Bankruptcy.    In the matter of John B. Keeler, bankrupt.    On
application by Eunice E. Griffing, as guardian ad litem of Ward D.
Breeze, a minor, for vacation of injunction.    Motion granted.

Mangan & Mangan, of Binghamton, N. Y., for the motion.
Vere H. Multer, of Binghamton, N. Y., opposed.

RAY, District Judge.    Within the four months preceding the fil-
ing of the petition in bankruptcy by the bankrupt, John B. Keeler,
Eunice E. Griffing, as guardian ad litem of said Ward D. Breeze, a
minor, obtained a judgment against said John B. Keeler in the City
Court of the City of Binghamton, Broome county, N. Y., for the sum
of $100 and interest and costs, on the allegation in the complaint in
said action that the said $100 was placed in the hands of said John
B. Keeler as security for the faithful performance by said Ward D.
Breeze of an agreement with said Keeler that he would faithfully and
honestly pay over to the said Keeler all sums of money belonging to
said John B. Keeler which he might collect for said Keeler as a sales-
man, to sell insurance of the Massachusetts Bonding & Insurance Com-
pany; that the contract was terminated, and that the said Ward D.
Breeze did honestly account for and pay over all such moneys, and
faithfully perform his agreement, and that he then demanded the re-
turn of the said $100 placed in the hands of Keeler as security, and
that said Keeler refused to return same, but, on the other hand, con-
verted same to his own use; and that no part of said $100 was offered,
tendered, returned, or paid to said Breeze, or paid his guardian ad
litem, who demanded same.

It is unnecessary to set out the complaint in said action, as it is a
clean-cut complaint for the willful conversion of said sum of $100.
The defendant answered in said action, but the findings were against
Keeler, and judgment was obtained by the guardian ad litem on the
allegations of the complaint.    Under the laws of the state of New
York, a body execution may issue against said Keeler.

The bankrupt claims that this judgment is a claim dischargeable
in bankruptcy, and one from which a discharge in bankruptcy would
be a release.    The guardian ad litem in said action, on the other hand,
claims that, this being a judgment for willful conversion of the

money of the said Ward D. Breeze, who was a minor at the time, the debt or claim and judgment is not dischargeable in bankruptcy, and that a discharge in bankruptcy will not be a release therefrom, and that therefore the injunction granted by this court should not stand, but be vacated.

I think this contention is clearly correct, in view of the decision of the Supreme Court of the United States in McIntyre v. Kavanaugh, 242 U. S. 138, 141, 37 Sup. Ct. 38, 61 L. Ed. 205, affirming Kavanaugh v. McIntyre, 210 N. Y. 175, 104 N. E. 135. The Supreme Court in the case cited says (242 U. S. 141, 37 Sup. Ct. 40, 61 L. Ed. 205):

"To deprive another of his property forever by deliberately disposing of it without semblance of authority is certainly an injury thereto within common acceptation of the words. Bouvier's Law Dictionary, 'Injury.' And this we understand is not controverted; but the argument is that an examination of our several Bankruptcy Acts and consideration of purpose and history of the 1903 amendment will show Congress never intended the words in question to include conversion. We can find no sufficient reason for such a narrow construction. And instead of subserving the fundamental purposes of the statute it would rather tend to bring about unfortunate, if not irrational, results. Why, for example, should a bankrupt who has stolen a watch escape payment of damages, but remain obligated for one maliciously broken? To exclude from discharge the liability arising from such transactions as those involved in Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, and here presented, not improbably was a special purpose of the amendment. In Tinker v. Colwell, 193 U. S. 473, 485, 487, 24 Sup. Ct. 505, 48 L. Ed. 754, we said of original section 17(2): 'In order to come within that meaning as a judgment for a willful and malicious injury to person or property, it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained.' And further: 'A willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.'"

Under the findings in the judgment referred to on the pleadings there was a clear conversion by Keeler of the money belonging to Breeze, and the conversion was knowingly and willfully committed. Breeze was forever deprived of his property and money by Keeler, deliberately and without semblance of authority. Keeler had no right to the money, and no right to use it and dispose of it. The City Court has so determined, and that judgment has not been reversed or set aside.

I am aware that there are decisions to the contrary in the lower federal courts, but this decision by the Supreme Court of the United States must be regarded as final and conclusive as to the proper construction and meaning of section 17 of the Bankruptcy Act. In McIntyre v. Kavanaugh, McIntyre & Co. had possession of Kavanaugh's stock as security for an indebtedness. McIntyre & Co., without notice to Kavanaugh, and without his authority, knowledge, or consent, sold and disposed of the certificates of stock turned over as security, and placed the avails in their own bank account. The court found that McIntyre & Co., in disposing of the stocks without notice to or demand upon the plaintiff, Kavanaugh, and without his authority, knowledge, or consent, and in depositing the proceeds and avails in

the bank account and to the credit of McIntyre & Co., committed willful and malicious injury to the property of the plaintiff. That was a case in bankruptcy, where McIntyre & Co. filed a petition in bankruptcy, and thereafter Kavanaugh proved his claim against the bankrupt estate.

In the instant case the money was placed in the hands of Keeler as security for the payment over of certain funds to be thereafter collected by Breeze, and if such funds were paid over then it was the duty of Keeler to return the deposit. Breeze did pay over all moneys collected by him, and owed Keeler nothing. He fully complied with his undertaking and agreement. Keeler had no right to the money, and no right to retain it, and when he refused on demand to return it, and used it for his own purposes, and converted it to his own use, under the decision of the Supreme Court he was guilty of willful and malicious injury to the property of Breeze. In the one case we have stock converted by the bankrupt, and in the other case we have money converted by the bankrupt. I discover no difference in principle between the two cases.

The injunction heretofore granted by this court, restraining the said Eunice E. Griffing from the further prosecution and enforcement of said judgment against Keeler, will therefore be vacated, and there will be an order accordingly.