**Edward W. HORNSBY, Plaintiff,**

v.

**U. J. DOBARD et al., Defendants.**

**Civ. A. No. 8527.**

United States District Court
E. D. Louisiana,
New Orleans Division.

July 27, 1964.

Baldwin, Haspel, Molony, Rainold & Meyer, Lawrence J. Molony, New Orleans, La., for plaintiff.

Chaffe, McCall, Phillips, Burke, Toler & Hopkins, Harry McCall, New Orleans, La., Dufour, Levy, Marx & Lucas, Leonard B. Levy, New Orleans, La., for New Orleans Union Passenger Terminal, defendant Railroads, and Richard R. Mayhall and C. J. Wallace.

Abraham I. Kleinfeldt, New Orleans, La., Milton Kramer, Washington, D. C., for Railroad Yardmasters of America, Local Lodge 99 of the Railroad Yardmasters of America, Albert Mullen and A. J. Espenan.

AINSWORTH, District Judge.

The question for decision is whether plaintiff has shown that the labor union representatives on the National Railroad Adjustment Board (Fourth Division) which heard plaintiff's claim concerning his seniority as a railroad yardmaster at the New Orleans Union Passenger Terminal, had such personal interests arising out of their union memberships or employment, or from the agreement between the union and the carrier, as would justify an inference of bias or partiality by

reason of interest, thereby requiring a judicial review of the Board's decision.

In this suit for a declaratory judgment and damages plaintiff alleged that he had been a station master in the employ of the Illinois Central Railroad; that upon the opening of the New Orleans Union Passenger Terminal he became its employee as a station master; that pursuant to a conspiracy on the part of defendants he was deprived of his proper seniority on the roster, being placed No. 6 or last, rather than No. 2, on the list.

The trial court originally maintained a motion to dismiss this suit, the court holding that the Board's order denying plaintiff relief was not subject to judicial review.[1] On appeal the dismissal was reversed and the case remanded for further proceedings consistent with the opinion. The Fifth Circuit (Hornsby v. Dobard, 291 F.2d 483, 487) summarized the issues to be tried on remand as follows:

> "One of the charges against the Board is that its Chairman, prior to its hearing, had told Hornsby that because he was an employee of the Railroad Yardmasters of America he could not be expected to rule contrary to its wishes. Different in degree but not in kind is Hornsby's assertion, inartfully made but nevertheless asserted, we think, that the Board was composed of his adversaries from whom he could not expect to receive a fair and impartial hearing. If it is shown that the union representatives on the Board have such personal interests arising out of their union memberships or employment, or from the agreement between the union and the carrier as would justify an inference of bias or partiality by reason of interest, then the right to a judicial review will not

be denied. Edwards v. Capital Airlines, Inc., 1949, 84 U.S.App.D.C. 346, 176 F.2d 755, certiorari denied 338 U.S. 885, 70 S.Ct. 186, 94 L.Ed. 543. Thus if it is here made to appear to the district court that the Board, as constituted by the Act, was not such an unprejudiced tribunal as could afford to Hornsby the fair and impartial hearing and decision that due process requires, then its duty will be to review the Board's order."

With the agreement of all parties we have now tried the allegations of bias, partiality and prejudice with the understanding that if the evidence failed to justify the conclusion that the Board was not such an unprejudiced tribunal as could afford plaintiff a fair and impartial hearing and due process, the suit would be dismissed; otherwise, further hearing would be held to receive all of the evidence in the case and thereby fully review the Board's decision.

We hold that plaintiff has failed to sustain his burden of proof and his suit should be dismissed.

Plaintiff testified that he had not received an impartial hearing before the Board. He said that prior to the hearing he was told by V. W. Smith, now deceased, vice-chairman of the Board, that he, Smith, was assistant to the Grand President of the Railway Yardmasters of America, at an annual salary of $8,000 and that he was not going to jeopardize his position.[2] Both plaintiff and William Irwin, his attorney at the time of the hearing, testified that the members of the Board appeared disinterested and were requested to pay attention to the oral presentation of their written submission. Plaintiff and Irwin also testified that Willian F. Fitzgerald, representative of the New Orleans Union Passenger Terminal, did not leave the hearing room

---

1. Generally the Board's decision is final and binding on the parties to the dispute, unless there be a money award. 45 U.S. C.A. § 153, First (m).

2. Defendants contend that under the law we should not give too much weight to the testimony of plaintiff, an interested party, about what a deceased man (Mr. Smith) said. Their contention is supported by the holding in Sun Life Assur. Co. of Canada v. Stacks, 7 Cir., 1951, 187 F.2d 17.

when the members held an executive session to consider plaintiff's request that he be allowed to tape record or have the proceeding transcribed by a stenographer.

Assuming arguendo that plaintiff was correct in his interpretation that what Board member Smith said to him before the hearing evidenced a prejudgment of the case, the evidence before us is not convincing that he was denied a fair hearing. The depositions of the other five members of the Board fail to demonstrate that they were biased or influenced by Smith when they rendered a unanimous decision against plaintiff. To the contrary, these Board members affirmatively testified they were not prejudiced or influenced by Smith. Plaintiff has produced no evidence, other than the adverse decision, that the five surviving members were in any way biased, prejudiced or influenced in their decision.

The Board members testified that they do not remember being disinterested or having to be admonished by plaintiff's counsel to pay attention to the submission. The hearing required almost an entire day for presentation of plaintiff's case and the matter was fully discussed with the Board by all interested parties. Furthermore, Mr. Fitzgerald testified that he did not remain in the Board Room during the executive session and he was corroborated by the testimony of the five surviving Board members that he did not remain in the room when they were in executive session. We conclude that no error resulted from the refusal to permit a transcript. No witnesses were heard and no testimony taken. The case was disposed of on the written submissions of the parties.

Plaintiff contends that the Railroad Adjustment Board was not intended to handle disputes of this nature, and because of its composition, he could not receive an impartial hearing. The Fourth Division of the Board consists of six members: three selected by the carriers, three by the unions (45 U.S.C.A. § 153). P. C. Carter from the Louisville & Nashville Railroad, Howard K. Hagerman from the New York Central and C. A. Conway from the Association of Western Railroads were the carrier appointees. V. W. Smith from the Railway Yardmasters of America, James P. Tahney from the American Railway Supervisors Association and William J. Ryan from the Railway Patrolmen's International Union were the union appointees. The Louisville & Nashville Railroad is one of the users of the New Orleans Union Passenger Terminal. Plaintiff asserts that he comes within the purview of Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), and Edwards v. Capital Airlines, 1949, 84 U.S. App.D.C. 346, 176 F.2d 755, cert. denied 338 U.S. 885, 70 S.Ct. 186 (1949) where judicial review was permitted. These cases depend on their particular facts. In Edwards the court was careful to so limit its ruling. These cases are clearly distinguishable from the present case for plaintiff here has failed to show either that the Board as constituted could not render an impartial decision or that there was individual bias or prejudice on the part of the Board members with the possible exception of Mr. Smith.[3] Judicial review is therefore not appropriate under the circumstances of this case.

There will be judgment for defendants dismissing plaintiff's suit.

3. The procedures of the Railway Labor Act were first enacted into law by Congress in 1926; and in 1934, the Act was amended and the Adjustment Board was created. The statutory composition is discussed and approved in Michel v. Louisville & N. R. Co., 5 Cir., 1951, 188 F.2d 224.