In re Claude William BROWN, Bankrupt.

Ruth ALDIS, Appellee,

v.

Claude William BROWN, Appellant.

No. 74-219.

United States District Court,
W. D. Oklahoma,
Bankruptcy Division.

Dec. 18, 1975.

John B. Estes, Oklahoma City, Okl., for bankrupt.

Robert H. Anderson, Jerome S. Sepkowitz, Oklahoma City, Okl., for appellee.

Robert K. McCune, Oklahoma City, Okl., for appellant.

DAUGHERTY, Chief Judge.

In this appeal Bankrupt Claude William Brown seeks review of the decision of the Bankruptcy Court that a $20,000.00 debt asserted against the Bankrupt by Ruth Aldis is not dischargeable in Bankruptcy. The appeal is taken pursuant to 11 U.S.C. § 67(c) and Bankruptcy Rules 810 et seq. The Bankruptcy Judge found that the Bankrupt had obtained $20,000.00 from Aldis by means of false representations or false pretenses, or, alternatively, that the Bankrupt had wilfully and maliciously converted $20,000.00 of Aldis' money, and, therefore, under the provisions of 11 U.S.C. § 35(a), the Bankrupt's debt to Aldis was nondischargeable in bankruptcy. The Bankruptcy Judge's findings of fact are basically as follows: In 1965 Aldis was a recent widow with money from her husband's estate. She was acquainted with one Jerry Spruell who was an insurance agent who had sold her husband a policy of life insurance shortly before his death. Spruell was also a friend of the Bankrupt. Spruell contacted Aldis and recommended that she invest in the Don D. Anderson Company for whom the Bankrupt worked. After conversations with Spruell and at least one conversation with the Bankrupt, Aldis, based on the representations made to her by Spruell and the Bankrupt, decided to purchase stock in the Anderson Company. In July, 1967 Aldis gave Spruell a $20,-000.00 personal check made payable to the Anderson Company with instructions to forward the check to the Bankrupt for the purchase of 200 shares of Anderson stock in her name. The check was cashed and the Bankrupt paid Spruell a $2,000.00 finders fee for obtaining this fund. No stock certificate was ever issued to Aldis. Aldis made inquiries concerning the disposition of her funds to the Anderson Company and these inquiries were referred to the Bankrupt. In February and December 1969 the Bankrupt sent Aldis personal checks in substantial sums. There was no notation on these checks as to their purpose. Aldis cashed these checks. In 1972 or 1973 the Anderson Company lost its brokerage license, the Bankrupt purchased the Company's assets and formed a successor company. In February 1974 the Bankrupt executed and delivered to Aldis a promissory note in the amount of $20,000.00. From the above findings of fact the Bankruptcy Judge concluded that the Bankrupt and Spruell had represented to Aldis that her $20,000.00 tender would be used for the purchase in her name of 200 shares of Anderson stock and that the Bankrupt's failure to use the money for this purpose constituted obtaining money by means of false representations or false pretenses. The Bankruptcy Judge found Spruell was the Bankrupt's agent and that the Bankrupt was liable for false representations made to

Aldis by his agent. The Bankruptcy Judge found that the Bankrupt had accepted the benefits of Spruell's false representations and had thereby ratified Spruell's acts. The Bankruptcy Judge found alternatively that the Bankrupt was guilty of wilful and malicious conversion of Aldis' funds.

Bankruptcy Rule 806 requires an appellant to state in his petition for review the issues he intends to raise on appeal. The Bankrupt's Statement of Issues herein is as follows:

"(a) The evidence was not sufficient to establish that the debt in question resulted from false pretenses or was a result of wilful and malicious conversion. (b) The judgment is not supported by the evidence."

Thus, the only issue presented is the sufficiency of the evidence to support the Bankruptcy Judge's decision. The Bankruptcy Judge's decision is based on four points: (1) the Bankrupt personally represented to Aldis that her $20,000.00 investment would be used for the purchase in her name of 200 shares of Anderson stock and the Bankrupt failed to use the money as represented; (2) Spruell was the Bankrupt's agent, Spruell made representations to Aldis that her investment would be used for the purchase in her name of Anderson stock, the money was not so used and the Bankrupt is bound by his agents' representations; (3) the Bankrupt ratified Spruell's representations by accepting the benefits thereof and is therefore bound as if he had made the representations himself; (4) the Bankrupt wilfully and maliciously converted Aldis' funds. The sufficiency of the evidence to support each of these conclusions will be considered in turn.

## REVIEW STANDARD

■ Bankruptcy Rule 810 provides that: "Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses."

This Rule is a revision of previous General Order in Bankruptcy 47 which also incorporated the clear error standard. See Advisory Committee's Note to Bankruptcy Rule 810. Statutory authority for this review is provided by 11 U.S.C. § 67(c). A finding of fact is not clearly erroneous unless, although there is evidence to support the Bankruptcy Judge's decision, the reviewing court, upon consideration of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *In Re Rohar Associates, Inc.*, 375 F.Supp. 637 (S.D.N.Y.1974).

11 U.S.C. § 35(a) reads in part:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as

\*　　\*　　\*　　\*　　\*　　\*

are liabilities for obtaining money or property by false pretenses or false representations . . . or for the willful and malicious conversion of the property of another . . ."

The parties did not provide for the transcription of the proceedings before the Bankruptcy Judge. Therefore the Court must turn to the summary of evidence provided by the Bankruptcy Judge in compliance with 11 U.S.C. § 67(a) in order to determine whether there was sufficient evidence to support any of the Bankruptcy Judge's alternative findings.

## FALSE PRETENSES/FALSE REPRESENTATIONS

The first basis for the Bankruptcy Judge's decision was that the Bankrupt personally represented to Aldis that her funds would be used for the purchase in her name of Anderson shares. In the summary of evidence the following relevant statements appear:

"  . . .  after talking several times with Spruell and at least one time with

Mr. Brown . . . she (Aldis) decided to purchase stock in the Don D. Anderson Company . . . it was never mentioned or represented by anyone that the $20,000 was a loan . . . Brown had told her he was buying Anderson Company and later told her that he had bought it . . . that Brown never mentioned to her that the $20,000 was considered a personal loan. . . ."

The Court is unable to determine from this summary whether or not Aldis testified that the Bankrupt ever told her, or that she ever told the Bankrupt, that the $20,000 was to be used for the purchase in her name of Anderson stock. Quite possibly this is the meaning that the Bankruptcy Judge intended to convey by the first line of the above quoted portion of his summary. If this is the case, the Court has no difficulty in upholding the Bankruptcy Judge's decision. If the Bankrupt told Aldis that the money was to be used for the purchase in her name of Anderson stock and this was not done there would be an obtaining of money by false pretenses and false representations. However, if the Bankruptcy Judge did not intend to convey the idea that Aldis testified she told the Bankrupt or the Bankrupt told her that the $20,000 was to be used for the purchase in her name of Anderson stock, an inference is necessary to find direct misrepresentation or false pretenses between Aldis and the Bankrupt.

■ A finding of fact may be based on reasonable inferences fairly drawn from the facts in question. *United States v. Carroll*, 212 F.Supp. 422 (W.D.Ark.1962); *United States v. Kansas Gas and Electric Company*, 215 F.Supp. 532 (D.Kan.1963). An inference is a reasonable deduction or conclusion from a proven fact. *United States v. L. D. Caulk Company*, 126 F.Supp. 693 (D.Del. 1955). The finder of fact has the function of weighing the evidence and choosing from among the conflicting factual inferences and conclusions those he considers most reasonable. He has the inherent right to disregard the testimony of any witness when he is satisfied that the witness is not telling

the truth or that the witness' testimony is inherently improbable due to its inaccuracy, uncertainty or interest or bias. *Sun Life Assur. Co. of Canada v. Stacks*, 187 F.2d 17 (Second Cir. 1951); *Thomas E. Snyder Sons Co. v. Industrial Molasses Corp.*, 270 F.2d 875 (Seventh Cir. 1959).

■ The Bankruptcy Judge's conclusion that the Bankrupt represented to Aldis that her $20,000 would be used for the purchase in her name of 200 shares of Anderson stock is clearly a permissible inference from the stated evidence. There was testimony that Aldis, after talking with the Bankrupt decided to purchase Anderson stock. It would be difficult to believe that in a conversation between these parties concerning the investment the subject of how the $20,000 was to be used did not come up. Aldis further testified that no one ever represented to her that the money was considered a personal loan. The Bankrupt testified that this was the nature of the transaction. Where a Bankruptcy Judge's finding of fact is based on inference from substantially undisputed facts, a reviewing Judge need not accord the finding the same weight as it would otherwise be entitled to. *Costello v. Fazio*, 256 F.2d 903 (Ninth Cir. 1958); *In Re Anjopa Paper & Board Manufacturing Co.*, 269 F.Supp. 241 (S.D.N.Y. 1967). However, in this case, in order to conclude as an inference that the Bankrupt represented to Aldis that her money would be used to purchase stock in her name the Bankruptcy Judge would have to disregard testimony by the Bankrupt that he made no such representation. Hence, the above rule does not apply and the Court should follow the Bankruptcy Judge's inference unless clearly erroneous. Upon review of the evidence, the Court is not left with the firm conviction that the Bankruptcy Judge erred in concluding that the Bankrupt himself made a false representation to Aldis.

### AGENCY

■ The Bankruptcy Court concluded that Spruell was the Bankrupt's agent. As a general rule, a principal is liable to third

persons for all acts done by his agent on his behalf if the agent's act is within the actual or apparent scope of his agency. 3 C.J.S. Agency § 390. Thus, if Spruell was acting as the Bankrupt's agent in soliciting Aldis' investment, and was acting within the scope of his authority, the Bankrupt would be liable for any false representations made, or false pretenses perpetrated, by Spruell. The Bankruptcy Court's conclusion was based on a finding of an implied agency between Spruell and the Bankrupt.

An agency relationship arises from the mutual consent of the principal and agent. However, it is not necessary that an actual contract exist between the parties. The agency and the consent of the parties thereto may be express or implied. An express agency is an actual agency created by an oral or written contract between the parties. An implied agency is also an actual agency, the existence of which is implied from the conduct of the parties. *Holmes v. McKey*, 383 P.2d 655 (Okl.1962). 2A C.J.S. Agency § 52. If it appears from the facts and circumstances of a case that there was at least an implied intent between the parties to create an agency relationship, the relationship will be held to exist between them. 2A C.J.S. Agency § 52.

Upon consideration of the Summary of Testimony, the Court is not convinced that the Bankruptcy Court's conclusion that Spruell was the Bankrupt's agent is clearly erroneous. The facts are that Spruell recommended that Aldis invest in the Anderson Company; that after conversations with both Spruell and the Bankrupt Aldis decided to follow this advice; that Aldis gave Spruell a check in the amount of $20,-000 to give to the Bankrupt for the purchase of Anderson shares in her name; and that the Bankrupt paid Spruell a $2,000 finders fee for obtaining Aldis' money. These facts and circumstances are sufficient to support a conclusion that Spruell and the Bankrupt intended that Spruell work as the Bankrupt's agent in procuring Aldis' investment.

## RATIFICATION

The third basis for the Bankruptcy Judge's decision is that the Bankrupt ratified Spruell's acts by accepting the benefits thereof and is therefore bound by Spruell's representations and acts. An agency may be implied where the principal recognizes and acquiesces in an act done by an agent. 2A C.J.S. Agency § 56. Ratification in agency is an adoption or confirmation by one person of an act performed on his behalf by another. The substance of the doctrine is confirmation after conduct. 2A C.J.S. Agency § 63. The essential elements of a ratification are (1) acceptance by the principal of the benefits of the agent's acts, (2) with full knowledge of the facts, and (3) circumstances or affirmative election indicating an intention to adopt the unauthorized arrangement. 2A C.J.S. Agency § 71.

In this case the evidence clearly shows that the Bankrupt accepted the benefits of Spruell's acts, the $20,000. The facts are not so clear as to whether the Bankrupt had knowledge of all the facts when he accepted the benefits. However, as the evidence shows that Aldis had conversations with both the Bankrupt and Spruell before forwarding the investment and that the Bankrupt personally made false representations or failed to correct a false impression which had been created by Spruell, the evidence is sufficient to show that the Bankrupt had knowledge of the material facts. The material facts being that false representations concerning the use of her investment had been made to Aldis. The evidence is clearly sufficient to show an intent on the part of the Bankrupt to adopt an unauthorized arrangement, if it was such. Aldis contacted the Bankrupt several times after forwarding her investment. It appears that the Bankrupt brushed aside these inquiries. If the Bankrupt did not know at the time he accepted the $20,000 that Aldis intended that it be used for purchase in her name of Anderson shares, this fact must have been brought home to him through these subsequent inquiries.

By taking no action in response to Aldis' inquiries the Bankrupt evidenced an intention to adopt Spruell's unauthorized arrangement. Thus, the evidence appears sufficient to support a finding of ratification on the part of the Bankrupt. Such a finding is however not central to the case as the same facts which show ratification also show direct fraud and misrepresentation on the part of the Bankrupt.

## CONVERSION

The final basis stated by the Bankruptcy Judge for his decision was that the facts presented established that, at the very least, the Bankrupt was guilty of willful and malicious conversion of Aldis' funds within the meaning of 11 U.S.C. § 35(a). Not every act of conversion is willful and malicious within the meaning of this clause. *United States Fidelity and Guaranty Company v. Tanner,* 279 F.Supp. 396 (D.Colo. 1968). Nevertheless, if an act of conversion is done deliberately and intentionally in knowing disregard of the rights of another, it falls within the statutory exclusion even though there may be an absence of special malice. *Bennett v. W. T. Grant Company,* 481 F.2d 664 (Fourth Cir.1973); *McIntrye v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916).

The Bankruptcy Judge concluded that the Bankrupt represented to Aldis that her $20,000 would be used for the purchase in her name of 200 shares of Anderson stock. The Court has previously determined that this is a permissible inference from the facts of the case as revealed by the summary of evidence. On this state of the record the Court has no difficulty in determining that the evidence supports the Bankruptcy Judge's determination that the Bankrupt's acts constituted willful and malicious conversion within the above stated definition of the terms.

AFFIRMED.